UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CLARENCE SAMUEL ETHRIDGE                                                    Plaintiff

v.                                                     Civil Action No. 3:20-CV-00724-RGJ-CHL

SALTER LABS, INC.                                                          Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant Salter Labs, Inc. ("Salter Labs") moves for Summary Judgment [DE 20]. Plaintiff Clarence Samuel Ethridge ("Ethridge") responded [DE 21], and Salter Labs Replied [DE 22]. This matter is ripe. For the reasons below, the Court **GRANTS** Salter Lab's Motion for Summary Judgment [DE 20].

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

Salter Labs employed Ethridge as a full-time forklift operator. [DE 8 at 229]. On January 7, 2019, Ethridge injured his shoulder and neck while operating a forklift at Salter Labs. [DE 1-8 at 32-33; DE 8 at 229]. The same day, he reported the injury and provided notice of his intent to seek Workers' Compensation benefits. [DE 10-1 at 302; DE 1-8 at 32-33]. Ethridge received a letter on January 10, 2019 from Salter Labs' workers' compensation carrier, CNA, stating that they had been notified of a claim submitted under Salter Labs' policy and telling him what to expect next, including investigation and fact gathering, medical management, and potentially a return to work program. [DE 8 at 235, 270-72].

Ethridge sought medical care for "neck pain, chronic right shoulder, cervical spondylosis without myelopathy, foraminal stenosis of cervical region, and cervical radiculopathy" from his injury. [DE 8-3 at 261]. He was later seen for "neck and right upper extremity pain." [*Id.*]. One

1

of Ethridge's doctors reviewed his x-rays, CT scan, and MRI, discussed surgery as a last resort, and referred him to a specialist. [*Id.*]. For months, he underwent physical therapy, medications, epidural steroid injections, and right shoulder injections, but continued to have pain. [*Id.* at 262]. During this time, Ethridge's doctor determined that he was unable to return to work. [DE 7 at 78; DE 8 at 229].

Salter Labs held Ethridge's position open for him for approximately six months. [DE 7-3]. At the end of this period, on July 15, 2019, Stephanie Carver, Senior HR Manager with Salter Labs, wrote to Ethridge offering him a modified/light duty position, and explaining that the Workers' Compensation Carrier sent a job function evaluation and list of duties to Ethridge's physician for evaluation ("Carver's Letter"). [20-3 at 435]. A job function evaluation form was also completed by an employee of Salter Labs, indicating that no light duty was available for "warehouse asso," the type of position offered to Ethridge. [DE 8 at 235; DE 8-4 at 268]. In Carver's Letter offering Ethridge a modified position, Carver referred to a discussion she had with Ethridge on July 19, 2019 (four days after the date on Carver's Letter),[1] and stated that Salter Labs would "separate" Ethridge if he did not return to work in some capacity within thirty days. [DE 20-3 at 435]. Ethridge did not respond to Carver's Letter or return to work in any capacity. [DE 8 at 230]. Salter Labs terminated Ethridge on August 19, 2019. [*Id.* at 229].

Ethridge states that he electronically filed a workers' compensation claim on August 20, 2019 seeking permanent occupational disability benefits. [*Id.*]. Salter Labs asserts they paid Ethridge's medical expenses and temporary total disability income benefits prior to his filing this claim. [DE 10 at 289]. On October 31, 2019, Salter labs electronically filed a notice of claim denial because they were disputing "the amount of compensation owed to the plaintiff," that "the

---

[1] This date discrepancy appears to be a typographical error.

alleged injury [arose] out of and in the course of employment," and "other." [*Id.* at 302-3]. The workers' compensation claim was submitted to an Administrative Law Judge ("ALJ"), who reviewed Ethridge's claim for permanent occupational disability benefits. [DE 8-3 at 260]. Ultimately, the ALJ held that Ethridge had suffered a cervical spine condition related to his work injury and that he could recover reasonable and necessary medical expenses. [*Id.* at 266]. The ALJ further held that Ethridge was entitled to receive temporary total disability pending maximum medical improvement following the injury. [*Id.*]. The ALJ placed the claim in abeyance pending maximum medical improvement from the effects of the work in jury and preserved all other issues for further resolution following removal of this claim, including extent and duration of permanent disability. [*Id.*].

Ethridge brought action in state court in July 2020, claiming Salter Labs fired him in retaliation for his Workers' Compensation claim in violation of Kentucky State Law. [DE 1-8 at 32; DE 8 at 230]. Salter Labs served Requests for Admissions on Ethridge on August 3, 2020, requesting that he admit that his claimed damages exceed $75,000. [DE 1-3 at 14]. Ethridge answered on August 24, 2020, "unable to admit or deny because his damages are reduced by any payment he may receive under a pending Workers['] Compensation Claim, therefore Plaintiff must DENY." [DE 1-4 at 15]. On August 31, 2020, Salter labs sent additional Interrogatories, Requests for Production, and Requests for Admissions to Ethridge, including requests that Ethridge admit "(1) his claimed damages exceed $75,000; (2) his asserted physical injuries are permanent; (3) he will not be able to return to any form of employment; (4) he is seeking permanent total occupational disability benefits in his workers' compensation claim; (5) that between January 7, 2019 and April 1, 2020 he was not cleared to return to work with no restrictions and (6) that as of

July 9, 2020 he has not been released to return to work with no restrictions." [DE 1-5 at 17-27; DE 7 at 79]. Ethridge did not respond by the September 30, 2020 deadline.

On October 22, 2020, Salter Labs moved to have the requests deemed admitted. [DE 1 at 3; DE 1-8 at 50-51; DE 7 at 79]. Salter Labs states that Ethridge's Counsel "verbally indicated no objection to the motion via a phone call held on October 23, 2020. No objection was filed, and no one appeared in opposition at the hearing," which occurred before the Jefferson Circuit Court on October 26, 2020. [DE 1 at 3; DE 7 at 79]. The Jefferson Circuit Court granted Salter Labs' Motion to Deem the Requests for Admissions Admitted on October 26, 2020. [DE 1-6 at 28]. Salter Labs then removed the matter to this Court based on Ethridge's admission that the claim exceeded $75,000. [*Id.*].

The Court denied without prejudice Salter Labs' previous motion for summary judgment, as it was filed prior to the completion of discovery, and the Court concluded that Ethridge had established his need for further discovery with particularity. [DE 19]. The deadline for completion of fact discovery was October 1, 2021, and expert discovery was May 1, 2022. [DE 17 at 359-60]. Discovery has now completed.

## II.   STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party shows that there is no genuine issue of material fact about an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435-36. The moving party has the burden of proving that no genuine issue of material fact exists. *Id.* at 1435. A fact is "material" if proof of that fact could establish or refute an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*

Once the moving party carries the initial burden of proving that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Id.* at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

Salter Labs seeks Summary Judgment on Ethridge's retaliation claim asserting that it has not discriminated or retaliated against Ethridge because Ethridge has "both asserted and admitted that he will never be able to return to any form of employment." [DE 20 at 383]. Ethridge argues that there is genuine issue of material fact whether his workers' compensation claim contributed to his firing, because there "is nothing in the record to indicate that at the time of the Plaintiff's termination, either he or the Defendant were aware that he would be unable to perform any sort of work." [DE 21 at 475].

The Kentucky workers' compensation statute states that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim" under the statute. Ky. Rev. Stat. § 342.197(1). An employee qualifies for the protections enumerated in this statute if he has given notice of his injury to the employer and has received some disability benefits, even if he has not filed a formal claim. *Overnite Transp. Co. v. Gaddis*, 793 S.W.2d 129, 130–31 (Ky. App. 1990).

Kentucky courts use a modified form of the *McDonnell Douglas* burden-shifting scheme to analyze retaliation claims. *Kentucky Ctr. for the Arts v. Handley*, 827 S.W.2d 697, 701 (Ky. App. 1991) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Chavez v. Dakkota Integrated Sys., LLC*, 832 F. Supp. 2d 786, 800 (W.D. Ky. 2011). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) there was a causal connection between the protected activity and the adverse employment action. *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. App. 2006). "[A] workers' compensation claim [is] an activity expressly protected under KRS 342.197." *Id*. A causal

connection can be established if the workers' compensation claim was a "substantial and motivating factor but for which the employee would not have been discharged." *First Prop. Mgmt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 188 (Ky. 1993); *Henderson v. Ardco, Inc.*, 247 F.3d 645, 654 (6th Cir. 2001).

Once a prima facie case has been established, the burden shifts to the employer to show a non-retaliatory reason for the adverse employment action. *Id.* at 916. The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were mere pretext for unlawful retaliation. *Id.* A plaintiff can establish that the offered reason is pretextual by showing either direct or circumstantial evidence of a discriminatory motive. *Bishop v. Manpower, Inc. of Cent. Kentucky*, 211 S.W.3d 71, 76 (Ky. App. 2006).

    a. <u>Prima Facie Case</u>

The parties do not dispute the first three elements of the prima facie test have been established in this case: that Ethridge engaged in protected activity by pursuing a workers' compensation claim, Salter Labs was aware of that activity, and Ethridge was discharged. The parties dispute the existence of the causation element. Salter Labs argues that summary judgment is proper because they terminated him for a nondiscriminatory reason: Ethridge was and is unable to return to work. [DE 20 at 383]. Thus, Salter Labs argues, there is no causation, and they are not required to hold Ethridge's position open indefinitely. [DE 20 at 383]. Ethridge counters that whether he is now incapable of work, nothing in the record indicates that Salter Labs was aware of that at the time of his termination. [DE 21 at 475].

To satisfy the causation prong of the *prima facie* test, Ethridge need not show that the sole or primary reason for the termination was the protected activity, but only that his engagement in a protected activity was a "substantial and motivating factor" in Salter Labs' decision to terminate.

*Dollar General Partners*, 214 S.W.3d at 915 (citing *Zarebidaki,* 867 S.W.2d at 188–89).[2] "Because there is often a lack of direct evidence, proof of a causal connection can be difficult and requires reliance on inference." *Id.* To establish a causal connection without direct evidence, the plaintiff may rely on circumstantial evidence. *Dollar General Partners*, 214 S.W.3d at 915. Circumstantial evidence sufficient to establish a causal connection in most cases requires proving (1) the defendant knew of the protected activity when they made the adverse decision and (2) the adverse decision is close in time to the protected activity. *Id.* (citing *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 790 (Ky. 2004), *as modified on denial of reh'g* (May 20, 2004).

There is no bright line after which adverse action is considered too far removed to have been prompted by protected activity and there is no requisite amount of time that will, as a matter of law, establish temporal proximity. *E.g., Bush v. Compass Grp. USA, Inc.*, 194 F. Supp. 3d 580, 586 (W.D. Ky. 2016), *aff'd,* 683 F. App'x 440 (6th Cir. 2017) (four to eight months not sufficient for temporal proximity); *Hume v. Quickway Transp., Inc.*, No. 3:16-CV-00078-JHM, 2016 WL 3349334 (W.D. Ky. June 15, 2016) (one month sufficient for temporal proximity). "[T]he Court must 'view the time between the two events in the context of the entire circumstances' to determine whether the timing is significant." *Bush*, 194 F. Supp. 3d at 586 (quoting *Dollar General Partners*, 214 S.W.3d at 915). The less time that passes between the two events, the stronger the implication that the adverse action was caused by the protected activity. *Id.* (citing *Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003), *as modified on denial of reh'g* (Jan. 22, 2004)). Yet simply because months have passed between the events does not mean that the decision is no

---

[2] The parties disagree on the appropriate standard and how *Zarebidaki* should be applied. Salter Labs argues that a plaintiff in a workers' compensation retaliation claim case must prove a "but for" standard [DE 20 at 384]; Ethridge argues that the Court in *Zarebidaki* held that a plaintiff need only prove that the retaliation was a substantial factor. [DE 21 at 475]. The appropriate standard is set forth above.

longer close in time to the protected activity; if it did, the employer would be shielded from liability simply by waiting months or years to take adverse action against employees. *Id.* Rather than look at a set number of days, weeks, or months, the Court is to look at the context and circumstances. *Id.* "[S]ubstantial case law from the Sixth Circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (collecting cases). The more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement his or her claim with other evidence of retaliatory conduct to establish causality. *Lambert v. Lowe's Home Centers, LLC*, No. 1:14-CV-00107-JHM, 2016 WL 6123239, at *5 (W.D. Ky. Oct. 19, 2016).

The parties previously disputed the time that passed between Ethridge filing his Workers' Compensation and when Salter Labs fired Ethridge, but the evidence of both parties supports that it was around seven months between the two events.[3] Thus there is not a genuine dispute about the time that passed. Ethridge was injured at work on January 7, 2019. [DE 1-8 at 32]. He filed for Workers' Compensation on January 7, 2019 and did not return to work at Salter Labs following his injury. [*Id.* at 33; DE 8 at 229]. Salter Labs fired Ethridge on August 19, 2019. [DE 8 at 229]. Because the two events are seven months apart, the temporal connection does not overwhelmingly favor an inference of retaliation. *See Taylor v. United Parcel Serv., Inc.*, No. 2011-CA-001210-

---

[3] Salter Labs contended that Ethridge filed for Workers' Compensation on January 7, 2019. [DE 10, at 289]. Ethridge argued that Salter Labs terminated him on August 19, 2019, and that his Workers' Compensation claim was electronically filed on August 20, 2019. [DE 8 at 229]. Ethridge submitted a letter from his Workers' Compensation Claim Specialist, dated January 10, 2019, supporting that he filed his Workers' Compensation claim by January 10, 2019. [DE 8-5 at 270]. Additionally, in his verified Complaint, Ethridge states he "filed a workers' compensation claim seeking permanent occupational disability benefits from his employer Salster [sic] Labs as the result of his work-related injury on *January 7, 2019*. [DE 1-8 at 33 (emphasis added)]. Both parties agree that Salter Labs terminated Ethridge on August 19, 2019. [DE 7 at 78; DE 8 at 229].

MR, 2012 WL 5630421, at *7 (Ky. App. Nov. 16, 2012) (Simultaneous termination made a *prima facie* showing of retaliation); *Hughes v. Norton Healthcare, Inc.*, No. 2019-CA-0222-MR, 2020 WL 7295190, at *11 (Ky. App. Dec. 11, 2020), *review denied* (Aug. 18, 2021) (two months between a protected activity and retaliatory action by itself can establish causation); *Brooks*, 132 S.W.3d at 804 (four months was too long to create an inference of causality by itself); *Mayberry v. Park Duvalle Cmty. Health Ctr., Inc.*, No. 2017-CA-001321-MR, 2018 WL 5881682, at *3 (Ky. Ct. App. Nov. 9, 2018) (four months by itself did not establish a causal connection); and *Dollar General Partners*, 214 S.W.3d at 916 (five months, while too long to establish a causal connection by itself, when viewed in context may still establish a causal connection). However, overwhelming evidence is not required; only an inference of a causal connection is required. Although this time frame itself is not attenuated enough to prevent Ethridge from establishing a causal connection, too much time elapsed to allow an easy inference of retaliation based on temporal proximity alone.

The Court turns to the circumstances to determine whether a causal connection can be inferred. *Darby v. Gordon Food Servs., Inc.*, No. 3:11-CV-00646-DJH, 2015 WL 3622529, at *3 (W.D. Ky. June 9, 2015) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)); *see also Dollar General Partners*, 214 S.W.3d at 916 (when lacking close temporal proximity, "[t]he logical approach is for the court to view the time between the two events in the context of the entire circumstances").

Ethridge argues only that Salter Labs' argument that he was fired because he cannot work cannot be accurate because there "is nothing in the record to indicate that at the time of the Plaintiff's termination, either he or the Defendant were aware that he would be unable to perform any sort of work." [DE 21 at 475]. Even taking all reasonable factual inferences in Ethridge's favor, the Court doubts whether there is sufficient evidence to allow for an inference of a causal

10

connection between the workers' compensation claim Ethridge filed and Salter Labs firing him. But given that the Court must consider the facts in a light most favorable to the Plaintiff, the Court will assume that Ethridge could prove a *prima facie* case of retaliation and will continue with the next step in the burden-shifting analysis.

   b. *Legitimate, Nondiscriminatory Reason*

After the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate and non-retaliatory reason for terminating the plaintiff. *Benningfield v. Fields*, 584 S.W.3d 731, 738 (Ky. 2019). While the employer bears the burden of production at this step, they are not subject to a credibility assessment. *Bishop*, 211 S.W.3d at 76; *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 497 (Ky. 2005).

Salter Labs asserts that it terminated Ethridge "due to this inability to return to any type of work." [DE 20 at 386]. In support of its articulated justification, Salter Labs submits Ethridge's admission that he was "not cleared to work with no restrictions" and thus "not able to accept the modified position that was offered to him." [DE 20 at 386]. Salter Labs puts forth Carver's Letter, dated July 15, 2019, in which they informed Ethridge if he was "unable to return to modified or full duty within 30 days of this letter, Salter will be forced to separate you from the Company and fill your position." [DE 20-3]. They also produce a letter showing the day Ethridge was terminated was August 19, 2019. [DE 20-4].

Salter Labs has thus articulated a legitimate nondiscriminatory reason for terminating Ethridge's employment—his inability to work—and refuted Ethridge's *prima facie* case of discrimination. Salter Labs thus met their "extremely light" *McDonnell Douglas* step two production burden. *See Baseball at Trotwood, LLC v. Dayton Pro. Baseball Club, LLC*, 204 F. App'x 528, 536 (6th Cir. 2006); *cf. Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) ("It is

11

important to note that the defendant need not *prove* a nondiscriminatory reason for [an adverse employment action], but need merely *articulate* a valid rationale." (emphasis in original)).

    c. <u>Pretext</u>

Once the defendant provides a non-retaliatory reason for termination, the burden shifts back to the plaintiff to show that the offered reason was mere pretext for retaliation. *Benningfield*, 584 S.W.3d at 738. At this stage, the plaintiff must show, either through direct or circumstantial evidence, that the defendant's discriminatory motive was a substantial and motivating factor behind their adverse employment action. *Bishop*, 211 S.W.3d at 77; *Zarebidaki,* 867 S.W.2d at 187–88; *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) ("the question remains whether, under the burden-shifting framework of *McDonnell Douglas*, [plaintiff] produced adequate evidence). "This burden is not heavy, though, as summary judgment is warranted only if no reasonable juror could conclude that the employer's offered reason was pretextual." *Strickland v. City of Detroit*, 995 F.3d 495, 513 (6th Cir. 2021). "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). An "employer is not free from liability simply because [it] offers proof [it] would have discharged the employee anyway, even absent the lawfully impermissible reason, so long as the jury believes the impermissible reason did in fact contribute to the discharge as one of the substantial motivating factors." *Zarebidaki,* 867 S.W.2d at 188; *see also Bullard v. Alcan Aluminum Corp.*, 113 F. App'x 684, 690 (6th Cir. 2004).

Ethridge offers only that "[t]here is nothing in the record to indicate that at time of [his] termination, either he or the Defendant were aware that he would be unable to perform any sort of work." [DE 21 at 475]. He argues whether he is permanently disabled does not matter, because

his workers' compensation filing could still have been a substantial motivating factor in Salter Labs' decision to fire him. [DE 21 at 475]. But Ethridge puts forth no evidence that his workers' compensation claim was a factor in Salter Labs' decision to terminate him. A complete lack of evidence makes it so that "no reasonable jury could find that the sheer weight of circumstantial evidence makes it more likely than not that [Salter Labs'] proffered reason for [Ethridge's] termination was a coverup" for retaliation. *Laws v. HealthSouth N. Kentucky Rehab. Hosp. Ltd. P'ship*, 508 F. App'x 404, 413 (6th Cir. 2012); *Chavez*, 832 F. Supp. 2d at 801 (granting summary judgment where "Plaintiff has produced no evidence that these workers' compensation claims were a factor in Defendants' actual decision whatsoever, let alone a substantial and motivating one."); *see also Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) ("the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext."). Accordingly, Ethridge's claim for Workers' Compensation retaliation fails and Salter Labs' Motion for Summary Judgment [DE 20] is **GRANTED**.

### IV.     CONCLUSION

Accordingly, for the stated reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment [DE 20] is **GRANTED**. The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

August 25, 2022

Cc: Counsel of Record

13